UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| D.C. OIL, INC., | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 10-0947 (RMU) |
| | : | | |
| v. | : | Re Document No.: | 15 |
| | : | | |
| EXXONMOBIL OIL | : | | |
| CORPORATION *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

# MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART THE EXXONMOBIL DEFENDANTS' MOTION TO DISMISS

## I. INTRODUCTION

The plaintiff, D.C. Oil, Inc., is the operator of an Exxon-branded retail gas station in the District of Columbia. Defendants ExxonMobil Corporation ("ExxonMobil") and ExxonMobil Oil Corporation ("ExxonMobil Oil" and, together with ExxonMobil, "the ExxonMobil defendants") are engaged in the business of oil production and refining. Until June 2009, the plaintiff leased the property on which its gas station is located from ExxonMobil and operated the station pursuant to a franchise agreement with ExxonMobil Oil. In June 2009, the ExxonMobil defendants executed a contract to sell the station property to defendant Anacostia Realty, LLC ("Anacostia"), a gasoline distributor that owns and supplies several retail gas station properties in the District of Columbia. The plaintiff alleges that the sale violated the District of Columbia Retail Service Station Amendment Act of 2009 ("RSSA"), D.C. CODE §§ 36-304.11 *et seq.*, and has asserted claims of civil conspiracy and promissory estoppel.

The matter is now before the court on the ExxonMobil defendants' motion to dismiss the plaintiff's claims for failure to state a claim for which relief can be granted. Because the court cannot conclude based on the parties' submissions to date that the RSSA does not apply to the sale of the station property at issue, the court denies the ExxonMobil defendants' motion to dismiss the plaintiff's RSSA claim. Because, however, the plaintiff has not asserted a viable claim of civil conspiracy or promissory estoppel against the ExxonMobil defendants, the court dismisses these claims as to those defendants.

## II. FACTUAL & PROCEDURAL BACKGROUND

The plaintiff operated an Exxon-branded service station and convenience store located at 2150 M Street N.W. in the District of Columbia. Compl. ¶¶ 3, 7. The plaintiff leased the service station premises from ExxonMobil and was supplied with Exxon-branded motor fuel through a long-term franchise agreement with ExxonMobil Oil. *Id.* ¶ 8. The plaintiff's convenience store was located in the first floor of a condominium building located on the property. *Id.* ¶ 7. The convenience store premises were subject to a lease between ExxonMobil and the condominium building association. *Id.*

In 2008, the ExxonMobil defendants began divesting themselves from the retail gas station market, selling gas station properties and assigning franchise agreements to distributors. *Id.* ¶ 9. In June 2009, ExxonMobil and Anacostia executed contracts for the sale of several Exxon-branded service stations located in the District of Columbia, including the one operated by the plaintiff. *Id.* ¶¶ 18-19. ExxonMobil and Anacostia signed a Special Warranty Deed for the sale of the plaintiff's service station premises on June 11, 2009 ("the Deed"). *Id.*

The plaintiff contends that the sale of the plaintiff's service station premises did not close until August 6, 2009. *Id.* More specifically, the complaint states that on June 17, 2009, the plaintiff's principal shareholder, Raj Gupta, was advised by an Exxon representative that ExxonMobil's lease for the plaintiff's convenience store included a requirement that the condominium association be given advance notice of any proposed assignment of the lease and a right of first refusal. *Id.* ¶ 20. Because the condominium association had not been provided notice of the proposed sale in a sufficiently timely manner, the sale to Anacostia could not close until early August. *Id.* Gupta was allegedly advised by Anacostia's principal, Eyob Mamo, that the plaintiff would continue to receive motor fuel product directly from ExxonMobil Oil and would continue to pay rent directly to ExxonMobil until the plaintiff's premises were transferred to Anacostia. *Id.*

The plaintiff alleges that through early August 2009, it continued to deal directly with the ExxonMobil defendants as its lessor and supplier of motor fuel. *Id.* ¶ 21. According to the complaint, on August 6, 2009, the station premises were finally transferred to Anacostia, as reflected in the Deed recorded with the Office of the Recorder of Deeds. *Id.*

The date of the transfer is potentially significant because it may be relevant to whether the RSSA applies to the transaction. The RSSA requires that a supplier offer its franchisor a right of first refusal before selling service station property to a third party. D.C. CODE § 36-304.12. Accordingly, if the RSSA applies here, the plaintiff should have been given the right to purchase the service station property before it was sold to Anacostia. *See id.* The RSSA became effective on July 18, 2009, one month after ExxonMobil and Anacostia executed a contract for the sale of the premises but three weeks before the plaintiff alleges the transfer took effect. *See* Compl. ¶¶ 18-21.

In June 2010, the plaintiff commenced this action against the ExxonMobil defendants and Anacostia. *See generally* Compl. The plaintiff alleges that the defendants violated the RSSA by depriving the plaintiff of its right of first refusal guaranteed by the provision. *Id.* ¶¶ 29-30. The plaintiff also alleges that the defendants conspired to violate the RSSA. *Id.* ¶¶ 31-32. Lastly, the plaintiff has asserted a claim of promissory estoppel against the ExxonMobil defendants, alleging that it reasonably relied on the ExxonMobil defendants' promise that they would only sell to a reputable distributor with the infrastructure and technology in place to support the dealers as well as Exxon had done. *Id.* ¶¶ 33-36. On July 9, 2010, the ExxonMobil defendants moved to dismiss the claims against them under Federal Rule of Civil Procedure 12(b)(6).[1] *See generally* ExxonMobil Defs.' Mot. With this motion now ripe for adjudication, the court turns to the applicable legal standards and the parties' arguments.

## III. ANALYSIS

### A. Legal Standard for a Rule 12(b)(6) Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests. *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing FED. R. CIV. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense to define more narrowly the disputed facts and issues." *Conley*, 355 U.S. at 47-48

---

[1] Anacostia filed an answer to the complaint on July 6, 2010. *See generally* Anacostia's Answer.

4

(internal quotation marks omitted). It is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-14 (2002), or "plead law or match facts to every element of a legal theory, *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000) (internal quotation marks and citation omitted). That said, "it is possible for a plaintiff to plead too much: that is, to plead himself out of court by alleging facts that render success on the merits impossible." *Sparrow v. United Airlines, Inc.*, 216 F.3d 1111, 1116 (D.C. Cir. 2000)

Yet, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (abrogating the oft-quoted language from *Conley*, 355 U.S. at 45-46, instructing courts not to dismiss for failure to state a claim unless it appears beyond doubt that "no set of facts in support of his claim [] would entitle him to relief"). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556).

In resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations – including mixed questions of law and fact – as true and draw all reasonable inferences therefrom in the plaintiff's favor. *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003); *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). While many well-pleaded complaints are conclusory, the court need not accept as true inferences

unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004); *Browning*, 292 F.3d at 242. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).

### B. The Court Grants in Part and Denies in Part the ExxonMobil Defendants' Motion to Dismiss

#### 1. The Court Declines to Dismiss the Plaintiff's RSSA Claim

The ExxonMobil defendants contend that the plaintiff has not stated a viable claim under the RSSA. ExxonMobil Defs.' Mot. at 4-5. They argue that under District of Columbia law, the property at issue transferred to Anacostia on June 11, 2009, the date on which ExxonMobil and Anacostia executed the Deed, and not on August 6, 2009, the date on which the Deed was recorded. *Id.* at 5. Because the RSSA did not go into effect until July 18, 2009 and does not apply retroactively to transactions occurring prior to its effective date, the ExxonMobil defendants contend that the RSSA does not apply to the transaction at issue. *Id.* The plaintiff responds that the RSSA applies retroactively to sales occurring after April 1, 2009. Pl.'s Opp'n at 4. Furthermore, the plaintiff contends that even if the RSSA does not apply retroactively, it applies to the transaction at issue here because the transfer of the plaintiff's service station premises did not take place until August 6, 2009, rather than June 11, 2009 as the ExxonMobil defendants contend. *Id.* at 1-4.

This court has already held in a related case that the RSSA does not apply retroactively. *See Metroil, Inc. v. ExxonMobil Oil Corp.*, 2010 WL 2814424, at *4-5 (D.D.C. July 20, 2010) (stating that "because the RSSA contains no express retroactivity language and is devoid of any clear implication that it was intended to apply retroactively, and because the Act is the sort of legislation for which retroactive application is particularly disfavored in the District of

Columbia, the court concludes that the RSSA does not apply retroactively to the transaction at issue in this case"); *see also generally Metroil, Inc. v. ExxonMobil Oil Corp.*, Civ. No. 09-1860 (D.D.C. Oct. 25, 2010) (Mem. Order) (denying the plaintiff's motion for relief upon reconsideration of its ruling that the RSSA does not apply retroactively). The parties in this litigation have not raised any new arguments not already considered in the court's prior rulings on this issue. Accordingly, the court concludes that the RSSA applies only prospectively to sales of service station premises occurring after its effective date of July 18, 2010.

The court therefore turns to the question of when the transfer of the station premises occurred. The D.C. Code provides that

> [a]ny deed conveying real property in the District, or interest therein . . . executed and acknowledged and certified as provided in §§ 42-101, 42-121 to 42-123, 42-306, and 42-602 and delivered to the person in whose favor the same is executed, shall be held to take effect from the date of the delivery thereof, except that as to creditors and subsequent bona fide purchasers and mortgagees without notice of said deed, and others interested in said property, it shall only take effect from the time of its delivery to the Recorder of Deeds for record.

D.C. CODE § 42-401; *see also Gomez v. Indep. Mgmt. of Del.*, 967 A.2d 1276, 1283 n.6 (D.C. 2009) ("In determining when the transfer of a property took place, we look to the date the deed was *delivered*, not the date it is recorded." (citing *Owens v. Liff*, 65 A.2d 921. 923 (D.C. 1949))).

It is undisputed that the Deed was signed by Anacostia on June 9, 2009 and by ExxonMobil on June 11, 2009. *See* ExxonMobil Defs.' Mot., Ex. 2; Pl.'s Opp'n, Ex. A. The ExxonMobil defendants contend that as a result, the Deed's date of delivery is June 11, 2009, and that under D.C. Code § 42-401, the transfer took effect on that date. ExxonMobil Defs.' Mot. at 5.

A number of considerations preclude the court from adopting the ExxonMobil defendants' analysis at this stage of the litigation. First, the Deed's date of delivery remains

7

unclear. The signature page of the deed states that it is being delivered "as of the date first set forth above." *See* ExxonMobil Defs.' Mot., Ex. 2; Pl.'s Opp'n, Ex. B. Yet, as the ExxonMobil defendants acknowledge, there are no dates set forth earlier in the Deed. ExxonMobil Defs.' Reply at 2. Although the ExxonMobil defendants contend that the date of delivery is the date on which ExxonMobil signed the Deed, they fail to provide any explanation for that assertion. *See* ExxonMobil Defs.' Mot. at 5; ExxonMobil Defs.' Reply at 1-2. Accordingly, it is not clear that the date of delivery is June 11, 2009, as the ExxonMobil defendants suggest.

Furthermore, there is a potentially material discrepancy in the copies of the Deed submitted by the ExxonMobil defendants and the plaintiff. *See* ExxonMobil Defs.' Mot., Ex. 2; Pl.'s Opp'n, Ex. B. The signature page of the version of the Deed submitted by the ExxonMobil defendants states as follows:

> Grantor has signed this Deed this 11[th] day of June, 2009, but EFFECTIVE as of this ___ day of ____, 2009 ("Effective Date").

ExxonMobil Defs.' Mot., Ex. 2.

On the other hand, in the version of the Deed submitted by the plaintiff, the date "Effective Date" is not left blank:

> Grantor has signed this Deed this 11[th] day of June, 2009, but EFFECTIVE as of this 6th day of August, 2009 ("Effective Date").

Pl.'s Opp'n, Ex. B.

The version of the Deed submitted by the plaintiff bears a stamp from the Recorder of Deeds certifying that it is a true copy. *Id.* at 2 & Ex. B. If the Deed specified an "Effective Date" of August 6, 2009 as the plaintiff's evidence suggests, it naturally calls into question the ExxonMobil defendants' assertion that the transfer took effect on June 16, 2009.

8

The plaintiff's contention that the transfer did not take effect until August 6, 2009 finds further support in the affidavit of Eyob Mamo, Anacostia's principal. In an affidavit submitted in connection with the related *Metroil* case, Ayob states that "[o]n August 6, 2009, ExxonMobil conveyed to Anacostia a second special warranty deed for a service station property located at 2150 M Street, N.W., Washington D.C." *Metroil*, Civ. No. 09-1860, Aff. of Eyob Mamo (Nov. 20, 2009), ECF No. 12-3, ¶ 5. Mamo's representation that ExxonMobil "conveyed" the Deed to the service station property at issue on August 6, 2009 casts further doubt on the contention that the transfer took place on June 11, 2009.

Finally, the court notes that in the complaint, the plaintiff alleges that the transfer of the service station property at issue was necessarily delayed until early August 2009 because of a provision in the lease between ExxonMobil and the condominium association requiring that the association be given advanced notice of any proposed sale and a right of first refusal. Compl. ¶¶ 18-20. This allegation is not addressed in the ExxonMobil defendants' motion to dismiss. *See generally* ExxonMobil Defs.' Mot.; ExxonMobil Defs.' Reply.

In light of these many unresolved issues, the court cannot conclude at this time that the sale of the service station property from ExxonMobil to Anacostia preceded the effective date of the RSSA. Because the ExxonMobil defendants have offered no other arguments for dismissal of this claim, the court declines to dismiss the plaintiff's RSSA claim.

**2. The Court Dismisses the Civil Conspiracy Claim Against the ExxonMobil Defendants**

The ExxonMobil defendants argue that regardless of the viability of the plaintiff's RSSA claim, the civil conspiracy claim against them must be dismissed. ExxonMobil Defs.' Mot. at 5. They contend that because civil conspiracy is a vehicle for asserting vicarious liability, and because the plaintiff seeks to impose direct liability for their violations of the RSSA, the civil

9

conspiracy claim against them should be dismissed as redundant of the plaintiff's RSSA claim. *Id.* The plaintiff responds that nothing precludes them from seeking to hold the ExxonMobil defendants liable both for violating the RSSA and conspiring to violate the RSSA. Pl.'s Opp'n at 5-7.

Under District of Columbia law, "conspiracy is not an independent tort but only 'a means for establishing vicarious liability for [an] underlying tort." *Paul v. Howard Univ.*, 754 A.2d 297, 310 n.27 (D.C. 2000) (quoting *Griva v. Davidson*, 637 A.2d 830, 848 (D.C. 1994)). In this case, the plaintiff does not seek to impose *vicarious* liability on the ExxonMobil defendants for their alleged violations of the RSSA; rather, the plaintiff alleges that the ExxonMobil defendants directly violated the RSSA by failing to offer the service station property to the plaintiff before selling it to Anacostia. *See* Compl. ¶¶ 29-32. Although this alleged violation required Anacostia's participation, this hardly changes the fact that the ExxonMobil defendants' purported liability is grounded in their failure to honor the plaintiff's alleged right of first refusal under the RSSA. *See id.* Accordingly, the plaintiff has failed to assert a viable claim of civil conspiracy against the ExxonMobil defendants and the court dismisses the claim.

### 3. The Court Dismisses the Promissory Estoppel Claim Against the ExxonMobil Defendants

The ExxonMobil defendants assert that the plaintiff's promissory estoppel claim must be dismissed. ExxonMobil Defs.' Mot. at 5-8. They contend that the plaintiff's franchise agreement expressly allowed ExxonMobil Oil to assign its interests to anyone without restriction. *Id.* at 6. Because promissory estoppel cannot be used to contradict the plain language of a written contract, the ExxonMobil defendants argue, the plaintiff's promissory estoppel claim must be dismissed. *Id.* at 5-8. In response, the plaintiff reiterates its allegation that ExxonMobil officials assured the plaintiff and other dealers that the station properties would

be sold to a distributor that had the infrastructure and technology in place to support the dealers as well as Exxon had done, and asserts that Anacostia does not qualify as such a distributor. Pl.'s Opp'n at 7-9. The plaintiff does not, however, respond to the ExxonMobil defendants' argument that its promissory estoppel claim is precluded by the express terms of the franchise agreement. *See id.*

"Under District of Columbia law, to establish a promissory estoppel claim, the plaintiff must show (1) a promise; (2) that the promise reasonably induced reliance on it; and (3) that the promisee relied on the promise to her detriment." *Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61, 71 (D.D.C. 2005) (citing *Simard v. Resolution Trust Corp.*, 639 A.2d 540, 552 (D.C. Cir. 1994)). "[R]eliance on a promise cannot be reasonable when it is completely at odds with the terms of a written contract covering the same transaction." *Id.* at 71 n.5 (citing *In Office Prods. Co. Sec. Litig.*, 251 F. Supp. 2d 77, 97-98 (D.D.C. 2003)). Indeed, "District of Columbia law is clear that promissory estoppel applies to arrangements only where no written agreements exist." *Parnigoni v. St. Columba's Nursery Sch.*, 681 F. Supp. 2d 1, 26 (D.D.C. 2010) (citing *Osseiran v. Int'l Fin. Corp.*, 498 F. Supp. 2d 139, 147 (D.D.C. 2007)); *accord Bldg. Servs. Co. v. Nat'l R.R. Passenger Corp.*, 305 F. Supp. 2d 85, 95 (D.D.C. 2004) ("District of Columbia law presupposes that an express, enforceable contract is absent when the doctrine of promissory estoppel is applied.").

In this case, the plaintiff does not dispute that its franchise relationship with the ExxonMobil Oil is governed by a written franchise agreement. *See* Pl.'s Opp'n at 7-9; ExxonMobil Defs.' Mot. at 5-8. Nor does the plaintiff dispute that the franchise agreement expressly permitted ExxonMobil Oil to "transfer or assign all or part of its rights or interest in th[e] Agreement, or delegate all or part of its duties or obligations under th[e] Agreement,

without restriction, to any person or entity." *See* Pl.'s Mot., Ex. 1 § 12.7; Pl.'s Opp'n at 7-9. Because the plaintiff's relationship with ExxonMobil Oil was memorialized in a written franchise agreement, and because the promise it seeks to enforce is at odds with the express terms of that agreement, the court dismisses the plaintiff's promissory estoppel claim.

## IV. CONCLUSION

For the foregoing reasons, the court grants in part and denies in part the ExxonMobil defendants' motion to dismiss. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 29th day of October, 2010.

RICARDO M. URBINA<br>
United States District Judge